UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MAYER ELECTRIC SUPPLY COMPANY, INC., ] ] ] | |
| Plaintiff, ] ] | |
| vs. ] ] | CV-00-CO-03059-S |
| J.D. EDWARDS WORLD SOLUTIONS COMPANY, INC.; et al., ] ] ] | |
| Defendants. ] | |

MEMORANDUM OF OPINION

I.  Introduction.

The Court has for consideration a motion to dismiss, which was filed by defendants J.D. Edwards World Solutions Company, J.D. Edwards World Source Company, J.D. Edwards & Company, PeopleSoft, Inc., Oracle Corporation, and Oracle USA, Inc. (collectively, "JDE"), on March 15, 2006. (Doc. 105.)  Plaintiff Mayer Electric Supply Company, Inc. ("Mayer") has sued JDE for federal copyright infringement under 17 U.S.C. § 501. (Doc. 102.)  JDE contends that Mayer cannot state a claim for copyright infringement because the facts alleged in Mayer's fifth amended complaint

establish that: (1) JDE had an implied license to use Mayer's copyrighted material, and (2) Mayer has been fully compensated for JDE's use of Mayer's copyrighted material. (Doc. 105.) The issues raised in JDE's motion to dismiss have been fully briefed and are ripe for decision. Upon due consideration and for the reasons stated herein, JDE's motion to dismiss will be granted in part and denied in part.

II.     Background.[1]

Mayer's claims against JDE arise from the parties' collaboration on the customization of wholesale distribution software, referred to as Industrial Product Distribution Enhancements ("IPDE").

Mayer is a Birmingham based wholesale distributor of electrical supplies and equipment, lighting, tools and factory automation products. In the course of its business, Mayer created "original specific, step-by-step methods of wholesale distribution," for which it obtained Certificates of

---

[1]For the purposes of this opinion, facts are accepted as alleged in the complaint. Recitation of the facts alleged by the plaintiff in this opinion is not to be construed as a verification that the allegations are true. Many of the background facts are the same as those outlined by the Court in its previous opinion in this case, which was entered on September 23, 2005. (Doc. 84.)

Registration with the United States Copyright Office after this lawsuit was filed in October 2000.

JDE engages in the marketing and support of software applications. When Mayer sought assistance in selecting and implementing a new computer software system, JDE demonstrated its "OneWorld" software to Mayer's selection team. After JDE agreed to fill gaps in its OneWorld system to support Mayer's requirements, Mayer licensed JDE's OneWorld Foundation, Financial, and Logistics/Distribution suites pursuant to a Software, License, Services and Maintenance Agreement ("SLSMA").

JDE later proposed to Mayer that the parties join together to create a wholesale distribution software product for the wholesale distribution industry: the IPDE. Mayer and JDE subsequently negotiated a Letter of Agreement ("LOA") to govern their joint development of the IPDE and future licensing of the product. The LOA provided that JDE would own the IPDE and license it back to Mayer for use with JDE's basic software. The LOA also required the parties to advise each other of all opportunities to license the IPDE to other customers and to negotiate in good faith regarding each party's share of licensing revenue received.

Mayer instituted this action when it discovered that JDE had licensed the IPDE to other customers without its knowledge and without attempting to negotiate a revenue split. Mayer has arbitrated most of its claims against JDE: breach of the LOA, breach of the SLSMA, fraud in inducing Mayer to enter into the LOA, fraudulent misrepresentation as to the LOA, fraudulent misrepresentation as to the SLSMA, breach of warranty, negligence and gross negligence, misappropriation of trade secrets, and unjust enrichment. The arbitrators' decision found for JDE on the first eight claims, but found for Mayer on the unjust enrichment claim in the amount of $1,797,138.00.[2] The arbitrators concluded that the LOA was not a valid contract under Colorado law because the parties did not have a "meeting of the minds" with regard to the revenue-splitting provision, a central component of the consideration term. Therefore, the contract failed for lack of consideration, but the arbitrators determined that Mayer was entitled to recover under Colorado law on the theory of unjust enrichment.

---

[2] The contents of the arbitrators' decision in this case are undisputed and referenced by both parties in support of their positions.

Mayer's copyright claims were excluded from the arbitration. The arbitrators determined only that Mayer did not make a written assignment of its intellectual property to JDE. In its Fifth Revised, Amended, and Restated Complaint, Mayer contends that JDE has infringed upon its copyrighted "specific, step-by-step methods of wholesale distribution" by reproducing in copies Mayer's copyrighted works, preparing derivative works from Mayer's copyrighted works, and distributing copies of works containing Mayer's copyrighted works without the legal right to do so. (Doc. 102 ¶ 47.)

III.   Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW*,

*Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor on the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

IV. Analysis.

    A. Development of the IPDE.

JDE contends that Mayer cannot state a claim for copyright infringement because the facts alleged in Mayer's complaint establish that JDE had an implied, nonexclusive license to use Mayer's allegedly copyrighted material in the development of the IPDE.[3] The Court agrees.

A plaintiff alleging copyright infringement is required to prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of

---

[3]The Court is unconvinced by Mayer's argument that JDE is barred by res judicata, collateral estoppel, and issue preclusion from asserting an implied license defense because they did not raise the issue at arbitration. (Doc. 113.) The arbitrators expressly excluded Mayer's copyright infringement claims from the arbitration, and they were not required to conclude, as a part of their final decision, whether Mayer granted JDE an implied copyright license through its conduct. Therefore, JDE cannot be barred from making an implied license argument at this point in the proceedings.

the work that are original." *Feist Pub., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). However, "the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996); *see also Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir. 1997). "While an exclusive license to use copyrighted material must be written, a nonexclusive license can be granted orally or can be implied from the conduct of the parties." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999).

It is undisputed that Mayer did not convey a written, exclusive license of its copyrighted material to JDE. Therefore, Mayer never transferred ownership of its intellectual property to JDE. However, it is clear from Mayer's fifth revised, amended, and restated complaint, as well as its responses to JDE's motion to dismiss, that Mayer did convey a nonexclusive license for JDE to use Mayer's "specific, step-by-step methods of wholesale distribution" in the development of the IPDE.

Mayer admits that it "attempted to give Defendant JDE a written nonexclusive license[, i.e., the LOA,] to use its unpublished wholesale

distribution copyrighted works for the purpose of jointly developing the IPDE." (Doc. 108 at 11 (citing Doc. 102 ¶¶ 26-28).) Mayer contends, however, that because the LOA failed for lack of consideration, the nonexclusive copyright license conveyed to JDE is also null and void and Mayer can sue for copyright infringement. Mayer is incorrect.

There is no requirement in federal copyright law that consideration be exchanged to effectuate a copyright license, even if that license is an exclusive license that transfers copyright ownership. *See* 3 Nimmer § 10.03[A][8]. Here, the parties are dealing with a lesser, nonexclusive and revocable license. Further, Mayer does not argue that payment pursuant to the revenue-splitting provision was a condition precedent to its permission for JDE to use its copyrighted material in the development of the IPDE. *See Jacob Maxwell, Inc.*, 110 F.3d at 753-54. In fact, such a condition would have been unworkable.

Rather, as described, in part, by Mayer:

- ". . . JDE propose[d] to Mayer that they would join with Mayer to create a wholesale distribution software product for the wholesale distribution industry which was ultimately identified as the 'Industrial

Products Distribution Enhancements' ("the IPDE"). The IPDE, according to JDE, would derive from Mayer's wholesale distribution original methods and once created, JDE would license it to Mayer and then sell licenses to its many customers and share revenue with Mayer from the sale of such licenses." (Doc. 102 ¶ 25.)

- "[I]t was upon JDE's assurances that an agreement would be worked out that Mayer's employees continued to tutor [a JDE specialist] as to Mayer's specific, step-by-step methods of wholesale distribution such that Williams could write out the Functional Specifications to what later became the IPDE . . . ." (*Id.*)

- "Subsequent to executing the December 28, 1998, [LOA] agreement, Mayer continued to do its part to complete of [sic] the development of IPDE to be part of OneWorld. This began by Mayer first sending its Chief Information Officer (CIO) [and senior programmer/analyst] to JDE's New Jersey offices to meet with JDE's [consultants/programmers]. Thereafter, [Mayer's senior programmer/analyst] spent hundreds of hours over the next three months overseeing the translation of Mayer's specific, step-by-step

wholesale distribution business methods. . . . [Mayer's senior programmer/analyst] thereafter thoroughly reviewed and approved the technical specifications as they began to be completed." (*Id*. ¶ 29.)

- "Upon approval of the technical specifications, they were submitted to JDE and its subcontractor . . . for the development of OneWorld computer source and object code.  During this process, [Mayer's senior programmer/analyst] consulted with JDE [and its subcontractor] concerning the programming of the IPDE to ensure the development followed what was now the Technical Specifications.  As code was completed by the developers,  [Mayer's senior programmer/analyst] coordinated and participated in the testing process of the code until the code accomplished substantially similar results to the Functional and Technical Specifications which were derived from Mayer's original and derivative copyrighted, specific step-by-step method, and until it worked with the base OneWorld system."  (*Id*. ¶ 30.)
- "In what Mayer believed at the time was furtherance of the Parties' [LOA], upon request by JDE's software developers, Mayer's CIO . . .

traveled to JDE's headquarters in Denver, Colorado to participate in a product development focus group for the purpose of programming the IPDE component, Special Pricing Agreements, into JDE's base OneWorld software." (*Id.* ¶ 31.)

- "In January through April 1999, JDE . . . and Mayer teamed up to produce a joint-marketing presentation specifically directed to the IPDE." (*Id.* ¶ 32 (parenthetical omitted).)

- "On or around March 1999, [Mayer's CIO] spoke with . . . Gerrie Electric concerning the IPDE. The meeting was to encourage Gerrie Electric to license the JDE's base OneWorld system and the Mayer/JDE jointly developed IPDE . . . ." (*Id.* ¶ 33.)

- "In April 1999, [Mayer's CIO] met with JDE at its Atlanta, Georgia office to assist JDE with a sales proposal of the IPDE to a company named IDG." (*Id.* ¶ 34.)

- "In mid-1999, [a] JDE programmer . . . visited Birmingham. During her visit, [a Mayer employee] again explained Mayer's specific, step-by-step methods . . . such that JDE could complete the programming of this IPDE component into OneWorld basic software." (*Id.* ¶ 35.)

- "In August 1999, [Mayer's CIO] hosted and demonstrated its OneWorld computer version of the IPDE to executives of Crane Distribution Ltd. . . . The purpose of this demonstration was to encourage Crane to license JDE's base OneWorld system and the Mayer/JDE jointly developed IPDE." (*Id.* ¶ 36.)

These actions demonstrate a pattern of "approving conduct" on the part of Mayer for JDE to use Mayer's copyrighted works in the production of the IPDE. *See Jacob Maxwell, Inc.*, 110 F.3d at 753. Mayer believed it had an agreement with JDE to split revenues from the jointly-developed software, and it voluntarily shared its copyrighted works with JDE in order to facilitate the creation of the product. "Implicit in that permission was a promise not to sue for copyright infringement . . . . until permission was withdrawn." *Id.* Mayer does not allege that it ever informed JDE, prior to the creation of the IPDE, that JDE could no longer use its copyrighted works. Therefore, JDE cannot be held liable for copyright infringement in the development of the IPDE, and that portion of Mayer's complaint will be dismissed.

B.   Subsequent Use of the IPDE and/or its Components.

In its second response in opposition to JDE's motion to dismiss, Mayer asserts that even if the Court finds that Mayer gave JDE permission to use its copyrighted works to develop the IPDE, such an implied license was only to develop the software for Mayer—and it did not include licensing that software to others or creating derivative works from their joint product. (Doc. 113.)  Yet, the facts alleged in Mayer's fifth revised, amended, and restated complaint clearly indicate that Mayer intended the IPDE to be licensed to others.  Mayer even outlines how it engaged in marketing the IPDE to companies in the hopes that it would earn a share of the resulting revenue.  However, the question for this Court is if JDE can be held liable for copyright infringement for licensing the IPDE or creating derivative products from the IPDE and/or its components after Mayer revoked its implied license—if it did do so—by informing JDE that it no longer had permission to use its copyrighted works.

It appears to this Court that Mayer's allegations and arguments indicate that the resulting IPDE may be a "joint work"; therefore JDE cannot be held liable for copyright infringement in the subsequent licensing of the

IPDE or its creation of later works from the IPDE.  (*See, e.g.*, Doc. 108 at 12-13 ("[B]oth parties went through a three (3) month negotiation process which resulted in the written agreement known in this litigation as the LOA for the purpose of their jointly developing the IPDE, a derivative work consisting of copyrighted works of Mayer and JDE.")) *See* 17 U.S.C. §§ 101, 201(a); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1492-93 (11th Cir. 1990) ("[T]he authors of a joint work are coowners of copyright in the work. . . . A 'joint work' is defined as 'a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.'")  However, JDE has not raised a "joint work" argument with the Court or otherwise addressed Mayer's contentions regarding JDE's licensing or utilization of the IPDE after its development.  Construing all of Mayer's allegations in its favor, it is not beyond doubt at this point in the proceedings that Mayer cannot prove any set of facts in support of its claim of copyright infringement as to JDE's use of Mayer's "specific, step-by-step methods of wholesale distribution" following their incorporation into the IPDE and Mayer's revocation of its implied license.

C.   Full Compensation.

JDE argues that Mayer's fifth revised, amended, and restated complaint should be dismissed in its entirety because Mayer's recovery in arbitration constitutes full compensation for JDE's use of Mayer's copyrighted material.  Because the Court has concluded that JDE's motion to dismiss is due to be granted with regard to Mayer's claims for copyright infringement in the development of the IPDE, we will address JDE's "full compensation" contention in the context of Mayer's claims for infringement after the development of the IPDE.

A "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b), *quoted in Aerospace Servs. Int'l v. LPA Group, Inc.*, 57 F.3d 1002, 1004 (11th Cir. 1995).  The arbitration panel in this case awarded Mayer $1,797,138 as an estimate of the value JDE derived from Mayer in monetary contributions and uncompensated work in the development of the IPDE.  (Doc. 66 at Ex. E, pp. 69-80.)  The arbitrators' decision expressly excluded federal copyright

claims and did not consider whether Mayer was entitled to damages for alleged copyright infringement after the development of the IPDE or other developments based on the IPDE's component parts. Moreover, in addition to monetary damages, Mayer seeks injunctive relief from future infringement and impounding and disposition of alleged infringing articles. (Doc. 102 at 24-25.) JDE has not established that Mayer has been fully compensated for its claims that JDE infringed its copyright after the development of the IPDE or by using its component parts. Therefore, JDE's motion to dismiss will be denied with regard to the portions of Mayer's complaint that relate to alleged copyright infringement after the development of the IPDE or developing/licensing products based on the IPDE's component parts.

V.   Conclusion.

For the reasons stated above, JDE's motion to dismiss is due to be granted with regard to Mayer's claims that JDE infringed its copyright in the development of the IPDE. JDE's motion to dismiss, however, is denied as it relates to Mayer's remaining claims addressing subsequent licensing,

distribution, or other utilization of the IPDE and/or its components.  A separate order in conformity with this opinion will be entered.

Done this <u>18th</u> day of <u>July 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297